# Ritter, Appellant, *v.* Harrisburg School District.

*School law—Contract for plans for school building—Architect— Insufficiency of funds—Electoral loan.*

1. In an action by an architect against a school district to recover commissions under a contract by which plaintiff was to prepare plans and superintend the construction of a school building, where the contract did not specify the kind of building nor its cost, plaintiff cannot recover if it appears that he did nothing but prepare some preliminary plans, and that he knew that the sum on which he claimed commissions was far in excess of what the school board, under the authority given by an electoral loan, could legally expend on the building.

2. Where an architect plans a school building as part of a program for several buildings for which the school district has no power to contract, he cannot recover his commissions on the cost of it.

3. In such case it is immaterial that the school district subsequently built another building partly out of the funds realized from the electoral loan and partly from revenue coming from other sources.

Argued November 30, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 21, May T., 1927, by plaintiff, from judgment of C. P. Dauphin Co., Jan. T., 1924, No. 498, on verdict for defendant, in case of Verus T. Ritter v. School District of the City of Harrisburg. Affirmed.

Assumpsit by architect on contract. Before Fox, J. The opinion of the Supreme Court states the facts.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*Francis H. Hohlen, Jr.,* with him *Saul, Ewing, Remick & Saul* and *Beidleman & Hull,* for appellant.—There was no evidence to submit to the jury on which it could base a finding that the contract was an invalid increase of indebtedness when made: McKinnon v. Mertz, 225 Pa. 85; Kreusler v. School Dist., 256 Pa. 281; Addystone P. & S. Co. v. Corry City, 197 Pa. 41.

The school district was not relieved from liability for the breach of the appellant's contract because it became impossible to build the girls' senior high school without exceeding the remainder of the increase of debt authorized by the electors: Gable v. Altoona, 200 Pa. 15; Potters Nat. Bank v. Twp., 260 Pa. 104; Schilling v. Twp., 260 Pa. 113; Com. v. Bader, 271 Pa. 308.

The Van Sickle report was not binding on appellant and it was error for the judge to charge the jury that they might find that it was.

*John R. Geyer,* with him *M. W. Jacobs,* for appellee. —The contract was too indefinite to be enforced: Briggs v. Morris, 244 Pa. 139.

Even if the agreement were not void for uncertainty, it could be enforced only in the manner and under the circumstances contemplated by the parties: McMillin v. Titus, 222 Pa. 500; Callen v. Hilty, 14 Pa. 286; Richardson v. Clements, 89 Pa. 503; McKeesport M. Co. v. Ins. Co., 173 Pa. 53; Myers's Est., 238 Pa. 195.

Impossibility excuses performance: Pollard v. Shaaffer, 1 Dall. 210; Scully v. Kirkpatrick, 79 Pa. 324; Miles v. Stevens, 3 Pa. 21; Lovering v. Coal Co., 54 Pa. 291; Ward v. Vance, 93 Pa. 499; Dixon v. Breon, 22 Pa. Superior Ct. 340; Wertz v. Klinger, 25 Pa. Superior Ct. 523.

OPINION BY MR. JUSTICE SCHAFFER, January 3, 1928:

A recital of the facts in this case disclosed by the record, will demonstrate that, as determined in the court below, plaintiff should not recover. In having his case submitted to a jury he got more consideration than he was entitled to receive; the trial judge should have decided the case as a matter of law.

Plaintiff, an architect, sued the School District of Harrisburg for $26,300, representing commissions on a school building which was never built and for which he did not even prepare definite and finished plans. The total commissions claimed amount to $40,000, representing 5% on $800,000, the estimated cost of the building. The difference between that sum and the amount sued for represents what plaintiff estimates it would have cost to carry out his undertaking had the building been constructed as he planned it. The claim is not on a quantum meruit for work which he actually did, but for the entire net amount which would have been due him had the building been constructed.

In the year 1916 the public schools of Harrisburg being overcrowded, its school authorities employed an expert, Dr. Van Sickle, to make a survey of them. In August of that year he made a written report recommending that three junior high schools be created and that a

new school be erected to accommodate all girls of senior high school age. The plan as outlined provided for two new school buildings and the enlarging and remodelling of three existing ones. The total estimated outlay was $1,190,000, of which $380,000 was for the new girls' high school and $200,000 for its site. The school board ultimately concluded that it would be expedient to increase the debt of the district by $1,250,000 to carry out the program and the electors gave their assent to this increase.

In January, 1917, the secretary of the school board addressed a communication to a number of architects, including plaintiff, informing them that the school district was considering a building program and invited them to attend a competition to demonstrate their fitness to design and superintend the erection of the contemplated structures. Plaintiff attended and exhibited a tentative sketch of a high school building.

In May, 1917, the board appointed four architects for the different buildings; appellant as one of them was chosen to prepare plans and specifications for the girls' senior high school and to superintend its construction. On June 30, 1917, the formal written contract between him and the school board, which is the basis for this action, was executed. It recited his appointment as architect to prepare plans and superintend erection "of a new girls' high school building" and his acceptance of the appointment. He agreed that he would when desired confer with the other architects who had been selected, and he undertook to prepare preliminary and working drawings and to perform the usual architect's services. The school board agreed to pay him 5% of the total cost of the building and equipment. At the time this contract was signed, it was not known what kind of a building was to be erected nor had any site been selected. Plaintiff did nothing to carry out the contract except to prepare some preliminary sketches and plans.

In September, 1917, the board postponed the selection of a site. In December, 1917, the contract for the junior high school was let at $403,000, an increase of $200,000 over the original estimate. In January, 1918, a contract was awarded for another of the buildings for $230,000, an increase of $170,000 over the original estimate. In order that it might borrow the necessary money to carry on the work of constructing the two buildings which it had contracted for, the school board had to agree with the federal government that it would engage in no further building activities. The completion of the two schools actually built, owing to additional costs, left but $417,000 of the electoral loan of $1,250,000 unexpended. Because of war conditions, the board, in January, 1918, passed a resolution postponing indefinitely the erection of the girls' senior high school and the enlargement and remodelling of two of the other buildings. Consequently plaintiff was notified by the school board, in January, 1918, that it had indefinitely postponed action on the building with which he was concerned.

During the summer of 1918, the superintendent of schools recommended another survey by experts, which was made and they reported that owing to war conditions the cost of the buildings already constructed had been unexpectedly high and that to carry out the original program would entail greatly increased cost and they recommended that the project of building separate senior high schools be abandoned and that a single coeducational high school be erected. In February, 1920, plaintiff was notified of a meeting of the board and that a resolution concerning the selection of an architect for the senior high school would be considered. He attended the meeting and subsequently wrote a letter to the board asking for advices in connection with the performance of "my contract for the senior high school." To this he received a reply stating that the board had selected another architect to plan a coeducational senior high school, that the building of a girls' senior high

school had been abandoned and that his contract to erect such a structure would not be put into effect. The school board proceeded to erect the coeducational high school at a cost of $1,550,000, all of which except $550,-000 it paid for without obtaining further electoral authority.

The amount of the electoral loan remaining unexpended when the project of building the girls' senior high school was abandoned, as before stated, was $417,-000; plaintiff's estimate of the cost of the building which he had planned was $800,000. The Van Sickle program estimate of the cost of erecting and equipping was $380,000. The invitation to appellant to join in the architect's competition stated that the entire project of erecting and remodelling all the buildings would be at a cost of approximately $1,000,000. The contract with plaintiff contained no description of the building he was to design save that it was to be a new girls' high school building.

We then have this situation: Plaintiff was invited to be and became the architect for part of a general building project, the approximate cost of which in its entirety was stated to him to be $1,000,000, and the estimated cost of the unit which he was to design $380,000. He knew that other parts of the building program had been contracted for and that necessarily the available funds therefor had been materially reduced,—actually to $417,-000. Notwithstanding this he proposed to draw plans for a contemplated building to cost $800,000 and claims the right to recover a commission on that amount, although the school board, under the authority given them by the electoral loan, could not legally have erected such a structure. This being the situation, he cannot be permitted to recover for the legal reasons which we will briefly state, prefacing them with the observation that he is not seeking to recover for the value of the actual work which he did.

Passing the questions whether the contract was so indefinite as not to be enforceable, or impossible of performance, and the circumstance that appellant assumes to determine the size and kind of building to be erected without any warrant therefor from the school board (which matters, if carefully investigated, might turn out to be lions in the pathway leading to his right to recover), we have the fact that plaintiff bases his claim on a cost of construction twice that contemplated by the survey and consequently by the school board. On such a claim he cannot recover: Hewitt v. Webb, 253 Pa. 406; DeHoff v. Scott, 69 Pa. Superior Ct. 9; Williar v. Nagle, 109 Md. 75.

The insurmountable block in plaintiff's way to recovery is that what he contemplated would result in an unlawful increase in the indebtedness of the school district. It had but $417,000 available for the building. His plan contemplated an expenditure of $800,000. Such an outlay the school board could not have made. The case at bar differs from Sauer v. McKees Rocks School Dist., 243 Pa. 295, in which an architect sued for commissions for services in connection with a school building and where the cost of the structure exceeded the 2% borrowing capacity of the district. There the architect originally claimed commissions on the completed cost of the building. By leave of court he amended his claim so as to recover only for the services actually performed and he was permitted to recover that amount. Had the plaintiff here made a like claim, which on the trial he expressly declined to do, he might have succeeded.

Appellant's counsel argue that his contract was separate from that for the erection of the building and in itself did not exhaust the borrowing capacity of the school district. With this we do not agree. Plaintiff's contract was inseparably bound up with the whole building program and by express reference made a part of it. When he planned a building as part of the program for

which it was beyond the power of the defendant to contract, he could not recover his commissions on the cost of it: Willis v. York County Directors of the Poor, 284 Pa. 138; Osterling v. Allegheny Co., 272 Pa. 458. We think that Addyston Pipe & Steel Co. v. City of Corry, 197 Pa. 41, cited by appellant for the proposition that where a municipality contracts a debt in the bona fide belief that ample provision has been made for its payment the debt is a valid one, although it subsequently develops that the provision made for its payment is inadequate, waves a danger signal to all municipal contractors where the contemplated work is to be paid for out of a loan. In that case the failure of the municipality to obtain funds to meet its contract was not due to exceeding its debt limit as fixed by a loan for the particular purpose, but to the fact that assessments levied on nonabutting property were held to be invalid.

The fact that the school board built another building partly out of the funds realized from the electoral loan and partly from revenue coming from other sources makes no difference. It could not have built the structure which plaintiff designed as part of the program he was retained to carry through out of the funds available. It is admitted in appellant's brief "that the school district would not have had power at that time [when plaintiff offered to proceed] to have let an entire contract for the girls' senior high school which would have been valid" but the suggestion is made that it could have been built piecemeal. This was not what the program contemplated. It provided for a girls' high school to be built from available funds. The case at bar differs from Harlow v. Borough of Beaver Falls, 188 Pa. 263, on which appellant places much reliance, where the plaintiff was employed by a borough as a consulting engineer to make plans for a proposed waterworks which it was subsequently decided by us could not be built because the borough had a contract with a private water company to supply it with water, and plaintiff was per-

mitted to recover his commissions. There was no question in that case of constitutional power in the municipality. If that case could be said to determine on principle the one in hand, which it cannot, its doctrine has been much modified by Willis v. York County Directors of the Poor, supra.

Being of the opinion that plaintiff in no event could recover as he seeks to do, alleged errors which would result in a new trial need not be considered.

The judgment is affirmed.