Mansfield et al. *v.* Philadelphia, Appellant, et al.

Argued April 12, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Aaron W. White,* with him *I. G. Gordon Forster* and *John J. K. Caskie,* Assistant City Solicitors, and *Frank F. Truscott,* City Solicitor, for appellant.

*Milford J. Meyer,* with him *Robert M. Bernstein,* for Mansfield et al., appellees.

*John B. Martin,* with him *Ernest R. White* and *Duane, Morris & Heckscher,* for Pedano, appellee.

OPINION BY MR. JUSTICE HORACE STERN, May 21, 1945:

The law of this case is clear. A vehicle of a fire department is exempt, when responding to an alarm, from the restrictions of the Motor Vehicle Code of May 1, 1929, P. L. 905, regarding speed (section 1002(f)), right of way (section 1014(b)), traffic signals (section 1026(d)), and entrance upon through highways and stop intersections (section 1016(d)). But these exemptions are conditioned upon the vehicle being operated "with due regard for the safety of all persons using the highway", and they do not protect the driver "from the consequences of a reckless disregard of the safety of others", or "from the consequence of an arbitrary exercise of [the] right of way". The municipality is jointly and severally liable with the operator for damages caused by his negligence (Act of June 29, 1937, P. L. 2329, section 619), provided such negligence is of a reckless na-

ture: *Reilly v. Philadelphia,* 328 Pa. 563, 569, 195 A. 897, 900; *Williams v. Pittsburgh,* 349 Pa. 430, 432, 37 A. 2d 540, 541.

In the mid-afternoon of a clear day a car of a battalion chief of the Bureau of Fire of the City of Philadelphia was being driven westwardly on Buist Avenue. In passing through the intersection of 63rd Street it came into collision with a beer truck driven north on 63rd Street by an employe of James Pedano, with the result that the truck was overturned in the intersection while the automobile continued across and along the north sidewalk of Buist Avenue for a distance of 150 feet and there crashed into the front of a residential property with such force that the foundation wall supporting the front porch of the building "was crushed into the cellar". In its passage over the sidewalk the car struck Harry Mansfield, a six-year-old boy, causing him severe injuries for which suit was instituted against Pedano and the City of Philadelphia. Verdicts were rendered in favor of the minor against both defendants in the sum of $10,000, subsequently reduced by the court to $6,000, and in favor of the minor's guardian, his grandmother, in her own right, in the sum of $642.20. The present appeals are by the City of Philadelphia from the judgments entered on those verdicts.

The only questions which merit discussion are these: (1) Was there evidence of the operation of the fire vehicle in such a reckless manner as to warrant the submission of the case to the jury? (2) Was the verdict in favor of the minor plaintiff excessive?

What constitutes reckless negligence has been so elaborately discussed in *Reilly v. Philadelphia,* 328 Pa. 563, 195 A. 897; *Cavey v. Bethlehem,* 331 Pa. 556, 1 A. 2d 653; and *Williams v. Pittsburgh,* 349 Pa. 430, 37 A. 2d 540, that further exposition of the subject would seem unnecessary. Testimony in the present case that the car of the battalion chief was being driven at a speed

of 60 miles an hour—a plausible estimate in view of the distance which it traveled after the collision and the force of its impact with the house on Buist Avenue—does not in and of itself, in view of the exemption in that respect already referred to, make out a case of recklessness of operation, and the same is true in regard to evidence that the car crossed 63rd Street in the face of a light at the intersection which was green at the time for 63rd Street and red for traffic on Buist Avenue: *Reilly v. Philadelphia*, 328 Pa. 563, 569, 195 A. 897, 900; *Williams v. Pittsburgh*, 349 Pa. 430, 432, 433, 37 A. 2d 540, 541. But the jury was justified, if it saw fit, in finding that the operator recklessly disregarded the safety of persons on the highway in his alleged failure, when traveling at such a high rate of speed, to give proper warning of approach and to pay adequate attention to the condition of traffic at the intersection, especially since the green light would naturally have encouraged traffic moving north on 63rd Street to continue across Buist Avenue. While there was evidence that the bell was being continuously rung and the siren sounded from the time the vehicle left headquarters, there was, on the other hand, positive testimony that no such warning was given until the car had reached the immediate vicinity of 63rd Street, and then only at a time when, because of the advance of the truck into the intersection, a collision was inevitable. Furthermore, both the driver and the chief testified they could see down 63rd Street as far as Chelwynd Avenue, a distance of 225 feet, but neither of them observed the approach of this huge truck, 18 feet long with a body 9 feet high; in fact they did not see it at any time before the happening of the accident although there was evidence that it was practically in the middle of the intersection before the fire vehicle started across. While, as previously stated, a fire vehicle is not ordinarily limited as to speed and is permitted to run through a red light, certainly recklessness of operation

cannot be denied if, in exercising those prerogatives, it fails to give due warning of its approach and if the operator pays no attention whatever to the traffic which is crossing an intersecting street; moreover, he cannot be heard to say that he did not see what must have been clearly visible to him had he looked.

We are of opinion, therefore, that the evidence was quite sufficient to justify the jury in finding, as it did, that this fire vehicle was being operated, at the time of the accident, with a reckless disregard for the safety of others on the highway, and that such operation was a causal factor of the injuries inflicted upon the minor plaintiff. Accordingly it follows that the City of Philadelphia is jointly and severally liable with Pedano, the negligence of whose employe was also established to the jury's satisfaction.

As to the amount of the verdict, the injuries suffered by the boy were severe and likely, in part, to be permanent. They consisted of a concussion of the brain, an extensive and deep laceration of the left thigh and a fracture of the left femur. The lad was in the hospital for almost three months during part of which time his leg was in a splint with traction and weights. The fracture has healed with good union and with but a slight shortening of the limb, but the scar from the laceration in the thigh, extending from 10 to 12 inches transversely and fanning out in a thinner line about 8 inches in breadth, goes deep down into the muscular structures; the surrounding tissue is devitalized by impairment of the circulation; the protruding ridge of the scar, by irritation from contact with the boy's clothing, frequently becomes ulcerated and those ulcerations occasionally break down and bleed; the scarred tissue, because of its tendency to contract, constitutes a potential threat of future trouble. Weighing all these factors we cannot say that the verdict in the minor's favor, as reduced by the learned trial judge, is excessive.

Judgments affirmed.