## Margotta v. Lancaster General Hospital

*Joseph A. McIntyre,* for plaintiff.
*Christopher S. Mattson,* for defendant.

GEORGELIS, *J.,* April 28, 1987 — Before the court are defendant's preliminary objections to plaintiff's amended complaint. Briefs have been filed, and the objections are, therefore, ready for disposition. For the reasons stated below, they will be sustained.

### FACTS AND PROCEDURAL HISTORY

The amended complaint alleges that plaintiff was admitted to the Lancaster General Hospital on or about August 30, 1984 and that he "suffered a post-operative infection of his right lower extremity." It does not identify the surgical procedure, when it was performed nor the exact location of the body on which it was performed. It also does not identify when the infection occurred nor when plaintiff became aware it had occurred.

Plaintiff filed his complaint on August 25, 1986, and defendant filed preliminary objections to it on September 16, 1986. After plaintiff filed his answer to the objections on September 22, 1986 and after defendant filed its brief on October 9, 1986, the parties, by the agreement of their counsel, which is evidenced by plaintiff's counsel's November 12,

1986 letter to defendant's counsel, agreed that plaintiff would file an amended complaint. The amended complaint was filed on January 6, 1987, and defendant's preliminary objection to it were filed on January 26, 1987. The parties' briefs and defendant's reply brief were subsequently filed, and the objections were requested to be assigned for disposition.

## COMPLAINTS AND PRELIMINARY OBJECTIONS

The complaint alleges that plaintiff's physicians were acting as defendant's agents, servants or employees and that they were under defendant's direction and exclusive control and within the course and scope of their employment. Its Count I alleges that defendant's negligent conduct resulted in plaintiff's suffering the post-operative infection; its Count II alleges that defendant and its agents, servants or employees had a duty to disclose the risks of the proposed treatment and that they breached that duty, thereby precluding plaintiff from forming the basis of an intelligent consent to the proposed treatment. Defendant's preliminary objections to the complaint were in the nature of a motion for a more specific pleading and sought clarification of whether Count I alleged defendant's independent duty to provide an informed consent or whether it alleged defendant's physician-agent's duty to provide an informed consent.

The amended complaint also alleged that plaintiff's physicians were acting as defendant's agents, servants or employees and that they were under defendant's direction and exclusive control and within the course and scope of their employment. Its Count I alleges the same negligence as the complaint's Count I but adds the following

subparagraphs in the paragraph which identifies the alleged, specific negligent conduct:

"(n) Exposure of plaintiff to a heightened risk of post-operative infection of which the defendant was aware or by the exercise of reasonable care should have been aware.

(o) Exposure of plaintiff to an epidemic of post-operative infection.

(p) Failure to assign patients to operating rooms, post-operative areas and hospital rooms so as to avoid a heightened risk of infection.

(q) Failure to maintain adequate procedures to provide plaintiff's treating physicians with information regarding a heightened risk of infection.

(r) Failure to maintain adequate procedures to provide plaintiff with information regarding a heightened risk of post-operative infection.

(s) Failure to warn of a dangerous condition.

(t) Failure to warn plaintiff of the infectious epidemic at the hospital.

(u) Defendant breached its duty owed to the plaintiff, a business invitee, to disclose the dangerous condition of the infectious epidemic at the hospital.

(v) Liability is based upon §343 of the Restatement (Second) of Torts in that the defendant failed to exercise reasonable affirmative care to see that the premises were safe for the reception of the plaintiff, a business invitee.

(w) The defendant failed to exercise reasonable affirmative care to ascertain the dangerous condition of the hospital and to give such warning that the plaintiff, a business invitee, may decide intelligently whether or not to accept the invitation to be admitted to the hospital." Its Count II alleges that defendant had a duty to disclose that an infectious epidemic existed and that defendant breached that

duty, thereby precluding plaintiff from forming the basis of an intelligent consent to the proposed treatment.

Defendant's preliminary objections to the amended complaint are in the nature of a motion to strike Count I's subparagraphs 7(n) through 7(w), the ones quoted above, and in the nature of a demurrer to Count II. In support of its motion to strike, defendant argues that, in contravention of the agreement between counsel, the addition of subparagraphs 7(n) through 7(w) introduces several new theories of negligence and that, since plaintiff failed to file a second amended complaint within 10 days after service of defendant's preliminary objections and since the two-year statute of limitations had expired, plaintiff should be prohibited from asserting these new theories. In support of its demurrer, defendant argues that, as a matter of law, a hospital has no independent duty to obtain a patient's informed consent and that, consequently, Count II of the amended complaint must be dismissed.

## DISCUSSION
### Demurrer To Count II — Informed Consent

We will address defendant's demurrer to Count II of the amended complaint first. As noted above, that count alleges that: (1) Defendant had a duty to disclose the existence of an infectious epidemic, which heightened the risk of post-operative infection; (2) defendant breached this duty by failing to so disclose; and (3) as a result of the breach, plaintiff was unable to form the basis of an intelligent consent to the proposed treatment.

For the purposes of its demurrer, defendant admits every well-pleaded material fact set forth in Count II, as well as all inferences reasonably deduc-

ible therefrom, but not conclusions of law. *Bartanus v. Lis,* 332 Pa. Super. 48, 480 A.2d 1178 (1984). It is only in a case that is free and clear from doubt and where it appears with certainty that, upon the facts averred, the law will not permit recovery by the plaintiff that a demurrer should be sustained. *Del Turco v. Peoples Home Savings Association,* 329 Pa. Super. 258, 478 A.2d 456 (1984). Here, plaintiff's Count II states a conclusion of law, namely that defendant had a duty to disclose, which conclusion defendant, for purposes of its demurrer, does not admit and which we must examine under the *Bartanus* and *Del Turco* standards.

In support of its demurrer, defendant contends, inter alia, that: (1) even though Pennsylvania recognizes the doctrine of informed consent, its application is limited to physicians and does not extend to hospitals; (2) when plaintiff amended his complaint to allege that defendant only, and not defendant and its physician-agents, had the duty to disclose, he abandoned his theory of vicarious liability; and (3) since Pennsylvania's adoption and application of the doctrine is based on a battery theory and since the physician, not defendant, performed the surgery, the doctrine cannot be applied against defendant, vicariously.

Plaintiff, on the other hand, acknowledges that there is no Pennsylvania appellate authority for application of the doctrine to hospitals but contends that: (1) inversely, there is no such authority disallowing such an application and (2) this case is distinguishable from the authority cited by defendant, because plaintiff is not seeking the imposition on defendant of a duty, identical to one imposed on a treating physician. In support of this latter contention, he argues that defendant knew of the infectious epidemic and therefore had the duty to dis-

close it and that denying him the right to assert this duty and its breach denies him the opportunity to have given an informed consent.

Our research uncovered only one Pennsylvania case, *Hurley v. Won,* 9 D. & C. 3d 796, (1979), which dealt specifically with a hospital's duty to obtain a patient's informed consent. *Hurley* at 798, held that there is no duty, in Pennsylvania, on a hospital to obtain consent from a patient prior to an operation.

It is *Hurley* on which defendant relies and which plaintiff attempts to distinguish. *Hurley* refused to impose on defendant hospital a redundant duty, identical to the one that court recognized as imposable on the surgeon. Plaintiff argues that *Hurley* is distinguishable, because the duty he has here asserted cannot be identical to one imposable against the surgeon, since defendant (and presumably, although plaintiff does not so explicitly state, not the surgeon), had the epidemic information required to allow plaintiff to give his informed consent.

Our research failed to uncover any Pennsylvania authority for imposing an independent duty on a non-physician to obtain a patient's informed consent. Those decisions on the issue refer exclusively to a physician's duty to obtain informed consent. See, e.g. *Smith v. Yohe,* 412 Pa. 94, 194 A.2d 167 (1963); *Gray v. Grunnagle,* 423 Pa. 144, 223 A.2d 663 (1966); *Cooper v. Roberts,* 220 Pa. Super. 260, 286 A.2d 647 (1971) (allocatur refused); *Malloy v. Shanahan,* 280 Pa. Super. 440, 421 A.2d 803 (1980) (plurality decision); *Boyer v. Smith,* 345 Pa. Super. 66, 497 A.2d 646 (1985); and *Festa v. Greenberg,* 354 Pa. Super. 346, 511 A.2d 1371 (1986).

Accordingly, we agree with both parties that Pennsylvania does not recognize an independent

duty on a non-physician to obtain a patient's informed consent. Absent the recognition of such a duty, we do not accept plaintiff's invitation to create such a duty. Under the current state of the law, it appears with certainty that plaintiff cannot recover under Count II. *Del Turco,* supra. If such a duty is be be created, it must be left to our appellate courts.

In reaching this conclusion, we make these additional observations. First, we do not accept plaintiff's contention that defendant had the duty to disclose, because only it presumably knew of the infectious epidemic. The amended complaint contains no such allegation, and plaintiff is bound by its averments. Second, so long as Pennsylvania continues to base informed consent liability on a theory of battery (see *Boyer,* supra, at 69-72), and not on a theory of negligence, we do not believe that a hospital can be held liable, under these circumstances, for failing to obtain informed consent, because a hospital cannot physically commit a battery. We do not address defendant's vicarious liability for a physician's battery and failure to obtain consent because, as defendant argues, the amended complaint's Count II does not allege such liability. Defendant's demurrer to Count II will be granted.

### *Motion To Strike — New Cause of Action*

We will now address defendant's motion to strike subparagraphs 7(n) through 7(w) of the amended complaint. In support of its motion, defendant contends that: (1) the agreement between counsel to allow plaintiff to file the amended complaint was only for the purpose of addressing the issue raised by defendant in its preliminary objections to the complaint, namely, whether plaintiff was seeking recovery based on defendant's independent duty to obtain informed consent or based on a physician-agent's failure to do so; (2) Count II of the amended

complaint manifests the agreement of counsel; (3) by adding subparagraphs 7(n) through 7(w) to Count I, plaintiff has introduced new theories of negligence; and (4) since plaintiff failed to file a second amended complaint within 10 days after service of the preliminary objections to the amended complaint and failed to seek leave of court to file such an amendment, asserting these new theories of negligence, he is now barred from doing so by the statute of limitations.

Plaintiff contends that the new subparagraphs do not assert new theories of negligence and that the duty and failure to warn, which is contained in them, simply clarifies the duty to disclose, which was asserted in Count II of the original complaint. There are three reasons why we believe the additional subparagraphs must be stricken: (1) plaintiff did not have the consent of defendant to so amend his complaint and did not otherwise comply with the Pennsylvania Rules of Civil Procedure for amending it; (2) our granting of the demurrer to the informed consent count compels the striking of some of the new subpargraphs; and (3) the remaining ones state elements of negligence, which were not alleged originally and which are now barred by the statute of limitations.

As to the agreement of counsel, a review of the preliminary objections to the original complaint show that defendant was seeking to have plaintiff identify whether he was seeking recovery against defendant, directly and/or vicariously, for failure to have informed consent obtained. Defendant's brief in support of those objections, which has been filed of record, addresses that issue.

The agreement of counsel, evidenced by plaintiff's counsel's November 12, 1986 letter to defendant's counsel, states ". . . we agreed that I should

file an amended complaint in *Margotta* in order that the specific issues raised in your brief in support of outstanding preliminary objections might be put into the form of a demurrer or motion to strike." From all of this, we conclude that the agreement between counsel was to allow the filing of the amended complaint only for the purpose of raising the direct and/or vicarious liability issue of informed consent and nothing more.

Without defendant's consent to add subparagraphs 7(n) through 7(w), plaintiff was left with filing a second amended complaint within 10 days of the filing of the preliminary objections to the amended complaint, pursuant to Pa. R.C.P. 1028(c), or with seeking leave of court to add them, pursuant to Pa. R.C.P. 1033, neither of which he did. By opposing the preliminary objections, he now seeks leave of court to add them.

Amendments to pleadings are permitted by Pa. R.C.P. 1033 and, generally, have been liberally granted by Pennsylvania courts. However, a complaint will not be allowed to be amended where the effect of the amendment would be to assert a new cause of action after the statute of limitations has expired. *Shenandoah Borough v. Philadelphia,* 367 Pa. 180, 79 A.2d 433 (1951); Goodrich-Amram 2d §1033.4.1.

Instantly, the applicable statute of limitations is two years (42 Pa. C.S. §5524), and we will assume, absent specific allegations in the amended complaint regarding when the infection occurred, that plaintiff's cause of action accrued on or shortly after August 30, 1984. The amended complaint was filed on January 6 1987, more than four months after plaintiff's admission. The statute of limitations had, therefore, presumably expired prior to the filing of the amendment, and we must now examine

subparagraphs 7(n) through 7(w), under the *Shenandoah,* supra, standard.

Plaintiff contends that the new subparagraphs are mere clarifications of the duty to disclose, which he had asserted in paragraph 10, Count II, of his original complaint. Specifically, the new subparagraphs allege the following negligent conduct of defendant: 7(n) and 7(o): exposure to risk and epidemic, respectively; 7(p): failure to assign patients to infection-free areas; 7(q): failure to inform physicians; 7(r): failure to inform plaintiff; 7(s) and 7(t): failure to warn; 7(u): breach of duty to disclose; 7(v): failure to inspect and make safe; and 7(w): failure to ascertain and warn.

Arguably, subparagraphs 7(q), 7(r), 7(s), 7(t), 7(u) and 7(w), since they allege failures to warn, inform and disclose, clarify or amplify the duty to disclose, which plaintiff alleged in Count II of the original and amended complaints. Since defendant's demurrer to Count II will be granted, permitting these six subparagraphs to stand would be permitting plaintiff to plead elements of an informed consent cause of action, which as noted earlier is founded on the intentional tort of battery, within his cause of action in negligence. See *Isard v. Atkins,* 12 D. & C. 3d 15 (1979); *Gray,* supra; and *Cooper,* supra. This would allow plaintiff to effectively circumvent the granting of the demurrer to Count II, and, consequently, these six subparagraphs will be stricken.

As to subparagraphs 7(n), 7(o), 7(p) and 7(v), we fail to see how negligence for exposure to the epidemic, for failure to assign to infection-free areas and for failure to inspect and make safe can be read as clarifying a duty to disclose to plaintiff. These subparagraphs allege theories of negligence, which were not alleged in the original complaint and

which are now barred by the two year statute of limitations. See *Junk v. East End Fire Dept.*, 262 Pa. Super. 473, 490-1, 396 A.2d 1269, 1277 (1978). Therefore, defendant's motion to strike subparagraphs 7(n) through 7(w) will be granted.

Accordingly, we enter the following

### ORDER

And now, April 28, 1987, for all of the reasons stated in the foregoing opinion, defendant's preliminary objections to the amended complaint are sustained. Subparagraphs 7(n) through 7(w) of Count I and Count II, in its entirety, of the amended complaint are stricken. Defendant is directed to plead over to the amended complaint, with Count I's subparagraphs 7(n) through 7(w) and Count II stricken, within 20 days of the date of this order.